FILED

2011 Jan-27  AM 10:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SANDRA G. CLARK,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:09-CV-2294-RDP** |
| | } | |
| **MICHAEL J. ASTRUE,** | } | |
| **COMMISSIONER OF SOCIAL** | } | |
| **SECURITY,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Sandra G. Clark brings this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI").  For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and the proper legal standards were applied as to the analysis of the claims.

### I.  Proceedings Below

Plaintiff filed her application for SSI benefits on December 15, 2005, alleging disability beginning on February 2, 1999.  (Tr. 53, 57, 88).  Plaintiff's claim was denied on March 6, 2006. (Tr. 46-47).  On March 31, 2006, she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 45).  Her case was heard by ALJ Jerome Munford on February 20, 2008.  (Tr. 42, 287-330).  In his August 29, 2008 decision (Tr. 17-29), the ALJ stated he found no evidence that Plaintiff has performed substantial gainful activity since February 2, 1999, and determined that as of September 30, 2002, she had met the special earning requirements of the Act.  (Tr. 31).  However,

the ALJ further determined that Plaintiff was not eligible for SSI because prior to September 30, 2002, she could perform a significant number of jobs which existed in the national economy (Tr. 28-29) and therefore, was not disabled under the Act.

Plaintiff then retained counsel and initiated an appeal of the ALJ's decision. (Tr. 15-16). The Appeals Council denied Plaintiff's request for review on September 11, 2009 (Tr. 4-6), making the Commissioner's final decision subject to review under 42 U.S.C. § 1383(c).

## II.  Statement of Facts

Plaintiff was born on January 6, 1946, and at the time of the hearing was 62 years old. (Tr. 301). Plaintiff lives with her husband, her 31 year old daughter, and three grandchildren, ages 13, 8, and 4. (Tr. 301-02). Plaintiff completed the eleventh grade in high school and testified she has received no vocational training since that time. (*Id.*). Plaintiff's past work experience includes supervising the cleaning of office buildings with Rite-Way Services from 1992 until 1997 (Tr. 55-56, 80, 89), as well as cleaning theaters with her daughter during the same time period. (Tr. 305-06). Plaintiff noted she stopped working October 31, 1997 because "the job ended . . . they did not need us anymore." (Tr. 88).

Plaintiff contends that due to bad vision and diabetes she could not "see that good to work," and had trouble with both knees—they were deteriorating and she was in pain—and therefore, became unable to work. (Tr. 88). Plaintiff also suffers from asthma and high blood pressure. (Tr. 308-10). She is prescribed medication for diabetes, cholesterol, and hypertension, and during the hearing testified that she is prescribed four or five different medications in order to control her blood pressure. (Tr. 93, 310). Plaintiff further testified that she had begun using an inhaler two years prior to treat her asthma and that it does help with her breathing. (Tr. 309). Plaintiff has a valid driver's

license, but stated during the hearing that she has not driven since 1999 due to her poor eyesight. (Tr. 302).

During the hearing, Vocational Expert ("VE") Norma Jill Jacobson testified as to Plaintiff's past relevant work–the exertional, skill levels, and whether or not she felt Plaintiff had any transferable skills. (Tr. 323-24). It was the VE's opinion that Plaintiff's work as a cleaner was at the medium level, commercial cleaner, unskilled, no transferability. (*Id*.).

### III. ALJ Decision

Determination of disability under the Social Security Act requires a five step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity ("RFC") can meet the physical and mental demands of past work. The claimant's RFC is what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making this final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer

perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).   Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since February 2, 1999.  (Tr. 28).   Based upon the medical evidence presented, the ALJ also determined that Plaintiff has the following severe impairments through September 30, 2002:  diabetes millitus; hypertension; diabetic retinopathy; macular edema; suspected glaucoma; and cataracts.  (Tr. 28). He then found that these impairments, taken individually or in combination, did not meet or equal an impairment listed in the Listing of Impairments, Appendix 1, Subpart P, 20 C.F.R. Part 404.  (Tr. 28).  Most significant as it relates to this case, the ALJ found that "the evidence as a whole fail[s] to confirm disabling limitations arising from the claimant's impairment[s] on or before September 30, 2002, and [her] impairments were not of such severity that they could reasonably have been expected to give rise to disabling limitations" before that date.  (Tr. 28).   After reaching this conclusion, the ALJ found that Plaintiff retained the RFC to perform medium work with the following restrictions: no driving; no unprotected heights; no operation of hazardous machinery; and no work requiring the reading of instructions in fine or small print.  (Tr. 28-29).  Based on these findings and the testimony of the VE, the ALJ determined that sufficient jobs existed in the national economy which Plaintiff was capable of holding, and therefore, she was not disabled prior to September 30, 2002.  (Tr. 29).

## IV.  Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision reversed or, in the alternative, remanded for further consideration.  (Pl.'s Mem. 13).  Plaintiff asserts two principle arguments for relief:  (1) the ALJ violated his special duty to develop a full and fair record for an unrepresented claimant; and (2) the ALJ improperly discredited her and her husband's testimony that she was unable to work prior to September 30, 2002.

## V.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at

1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.  For the reasons set forth below, the ALJ's decision denying Plaintiff benefits is due to be affirmed.

## VI.  Discussion

### A.    The ALJ Properly Developed a Full and Fair Record.

Hearings before an ALJ are "inquisitorial rather than adversarial."  *Sims v. Apfel*, 530 U.S. 103, 111 (2000).  "The ALJ [has a] duty to investigate the facts and develop the arguments both for and against granting benefits."  *Id.*; *see Richardson v. Perales,* 402 U.S. 389, 400-01 (1971); *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981).  This obligation rises to a "special duty" when the claimant is not represented by counsel. *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995).  "In carrying out this duty, the ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'"  *Id.* (citing *Smith v. Schweiker,* 677 F.2d 826, 829 (11th Cir. 1982)).

However, this special duty will not arise if the claimant has waived her right to counsel.  *See Brown*, 44 F.3d at 934-35.  Moreover, even if an ALJ is under a special duty, a claimant must show that she was prejudiced by the absence of counsel before a case will be remanded for further development of the record.  *Id.*  While it does not appear that Plaintiff knowingly and intelligently waived her right to counsel, she has failed to show that she was prejudiced by the absence of counsel.

### 1.    Plaintiff Did Not Waive Her Right to Counsel Because She Was Not Fully Informed of the Opportunities Available to Her to Obtain Legal Assistance.

A claimant has a statutory right to be represented by counsel at an administrative hearing. *See* 42 U.S.C. § 406; 20 C.F.R., Ch. III, Pt. 404, Subpt. R; *Brown*, 44 F.3d at 934.  This right may

be waived provided the waiver is done "knowingly and intelligently." *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982).  A claimant's waiver is done knowingly and intelligently when the claimant has been informed of the right to free legal representation and the statutory cap on attorney's fees. *See id.*; *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir. 1981).[1]  If the record indicates that the claimant failed to obtain counsel because she feared the costs associated with representation, then the claimant has not waived her right to counsel. *Cowart v. Schweiker*, 662 F.2d 731, 734-35 (11th Cir. 1981).  However, if the claimant has been fully appraised of her right to obtain free legal representation, either by mail prior to the hearing or by the ALJ in his colloquy during the hearing, the claimant in stating her desire to proceed effectively waives her right to counsel. *See McCloud v. Barnhart*, 166 Fed. Appx. 410, 416 (11th Cir. 2006); *Johnson ex rel. Johnson v. Barnhart*, 348 F.Supp. 2d 1284, 1290-91 (11th Cir. 2004).  In *Edwards v. Sullivan*, 937 F.2d 580, 585 (11th Cir. 1991), the court held that a letter that did not disclose that an attorney's recovery would be statutorily limited to twenty-five percent of the claimant's award was insufficient for the claimant to have knowingly and intelligently waived her right to counsel.

In this case, the ALJ made two attempts to inform Plaintiff of her right to representation.  The ALJ first attempted to notify Plaintiff of her right to representation by sending Plaintiff a letter prior to the hearing which explained that she could obtain counsel.  (Tr. 30-33).  At the hearing, the ALJ asked Plaintiff if she had received a copy of the letter.  (Tr. 293).  Plaintiff first responded in the affirmative, but then stated that she cannot read because of her eyesight and, therefore, did not know. (Tr. 293).  It is unclear from the record whether Plaintiff was retracting her first statement or if she

---

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

was merely stating that she knew the letter had been received but that she did not know what it said. However, even assuming Plaintiff did receive the letter, the court concludes that the information concerning representation in the letter was insufficient. The sole paragraph related to representation stated:

**You May Choose To Have A Person Represent You**

If you want to have a representative, please get one right away. You should show this notice to anyone you may appoint. You or that person should also call this office to give us his or her name, address, and telephone number.

(Tr. 31). The letter says nothing about free legal representation or the statutory cap on attorney's fees.[2] (Tr. 30-41). Because the letter the ALJ sent Plaintiff is insufficient to inform her of her right to counsel, she could not have knowingly and intelligently waived that right.

The ALJ made a second attempt to notify Plaintiff of her right to representation at the hearing. At that time, the ALJ informed Plaintiff of her right to be represented by counsel and stated that there were "agencies which could represent [her] free of charge." (Tr. 292-93). He also explained that an attorney would assist her in submitting medical records, examining witnesses, and making legal arguments. (*Id.*). Admirably, the ALJ asked Plaintiff and her husband to confer as to whether she wished to proceed without a legal representative and even went off the record so that they could confer outside the courtroom. (Tr. 293). Though Plaintiff and her husband ultimately decided to proceed without legal representation, it is not clear from the record if she knowingly and intelligently understood her right to representation.

---

[2]To the extent that this information was included with the original letter, then it has not been included in the record. (*See id.*).

First, the ALJ did not mention the statutory cap on attorney's fees in his colloquy with Plaintiff and her husband.  Like the letter in *Edwards* that was insufficient to permit the claimant to waive his right to representation because it did not disclose the statutory cap on attorney's fees, this omission by the ALJ appears to fall short of what is required to fulfill the Commissioner's duty to fully inform Plaintiff of her rights in order to have knowingly and intelligently waived them.

Second, while the ALJ did inform Plaintiff that she could have legal representation free of charge and that she could request a postponement, it is unclear whether Plaintiff fully understood the availability of counsel or the benefit of postponing her hearing to obtain it.  Her exchange with the ALJ was as follows:

> ALJ:    [D]o you still wish to proceed this afternoon without an attorney or other legally qualified individual to assist you in your case?
> PL:      It's up to me?
> ALJ:    I certainly don't mind you talking to your husband, getting his advice but what you all need to do is to,  I want, I feel much more comfortable if you all would go outside in the waiting area, take as long as you want and talk among yourself, and then when you come back in the courtroom you'll tell me, Judge Munford, we want to go ahead or, Judge Munford, we would request a postponement.  So, why don't we go ahead and go off the record for a moment, you and [your husband] take your time going outside and . . .
> ALJ:    You and [your husband] have had an opportunity to discuss among yourself what [you] may wish to do this afternoon.  [. . .]   Having said that what is your desire?
> PL:      Well, we decided we would do it without a lawyer or anything.

(Tr. 293-94).  This exchange raises questions about whether Plaintiff fully understood the benefit of postponing the hearing.  Plaintiff had already waited two years from the date she requested a hearing to actually receive one.  (Tr. 30, 45).  The court is concerned that, because Plaintiff was also not made fully aware of the financial aspects of obtaining counsel, she may not have believed she could afford to hire an attorney and also may not have appreciated the benefit of postponing the

hearing to obtain an attorney. The fact that Plaintiff obtained an attorney shortly after the ALJ's adverse decision is of no moment. (Tr. 16). If she was not fully aware of her right to obtain counsel, then she could not knowingly and intelligently waive that right. Notwithstanding these concerns, the court need not conclusively decide the issue of whether Plaintiff made a knowing and voluntary waiver. This is because the court finds for the reasons discussed below that the ALJ was operating under a special duty and fulfilled his duty to fully develop the record.

      **2.**     **Even If Plaintiff Did Not Waive Her Right to Counsel, She Was Not Prejudiced by Substantial Evidentiary Gaps in the Record.**

Even if Plaintiff did not waive her right to counsel, the court's inquiry does not end there. *See Edwards*, 937 F.2d at 586; *Smith*, 677 F.2d at 829. Plaintiff must show that she was prejudiced because of her lack of representation. *Edwards*, 937 F.2d. at 586. In this analysis the court is not concerned "whether every question was asked which might have been asked had [Plaintiff] been represented by an attorney, as [it is] with whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Edwards*, 937 F.2d at 586 (quoting *Smith*, 677 F.2d at 830). "This at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)

In *Edwards v. Sullivan*, the claimant argued that her lack of counsel prejudiced her in submitting proof of her disability. In that case, the ALJ, after an initial hearing, ordered supplementary reports on the claimant's medical conditions to more adequately understand her limitations. 937 F.2d at 581. These reports were received into evidence along with a report from

every doctor who examined the claimant. *Id.* The court concluded that while the claimant disagreed with the ALJ's determination, she was not prejudiced by the absence of counsel because the presence of an attorney would not have changed the hearing's outcome. *Id.* In *Kelley v. Heckler*, the court similarly concluded that the claimant had failed to show prejudice where he made no allegation that the record considered by the ALJ was incomplete or presented any evidence that the presence of an attorney would have turned up additional evidence which would benefit the claimant. *Kelley*, 761 F.2d at 1540-41.

Just the opposite conclusion was reached in *Brown v. Shalala* where the court concluded that the claimant was prejudiced by the absence of an attorney. *Brown*, 44 F.3d at 935. In that case, the claimant informed the ALJ that he had been examined by a physician prior to the hearing and the ALJ promised to obtain a vocational report from the center where the claimant had undergone therapy. *Id.* However, the ALJ neither obtained the most recent medical records nor the vocational report. *Id.* The court concluded that it had "no way of knowing whether the evidence missing from this case would sustain [the claimant's] contentions of her inability to work." *Id.* at 936. Therefore, the record contained just the sort of evidentiary gaps necessitating remand for further consideration. *Id.* Additionally, in *Cowart v. Schweiker*, the Eleventh Circuit concluded that the failure to obtain testimony from a claimant's husband regarding her condition when he was readily available to provide such testimony amounted to a failure to develop a full and fair record. 662 F.2d at 735.

Unlike *Brown* and *Cowart* (where the ALJ failed to obtain pertinent and readily available evidence), Plaintiff has pointed to no relevant evidence which was not included in the record. (Pl.'s Mem. 10-11). Moreover, unlike *Cowart* (where the court failed to obtain the husband's testimony when he was present at the hearing), the ALJ took testimony from Plaintiff's husband. (Tr. 317-22).

11

Instead, this case is more like *Edwards* and *Kelley* where the ALJ considered all the relevant evidence before making his determination.

The most serious problem identified by Plaintiff is her assertion that she did not fully understand that she had to prove she was disabled prior to September 30, 2002. (Pl.'s Mem. 10-11). But the record suggests otherwise. First, the ALJ specifically told Plaintiff that she had to prove disability on or before September 30, 2002. (Tr. 299). Moreover, the ALJ specifically explained to Plaintiff that it was "not enough for [her] to appear before [him and] . . . say that I'm disabled" (Tr. 298), but that she must have "medical records, medical evidence" to that effect in order to prove her disability. (Tr. 299). Second, the ALJ asked Plaintiff and her husband to specifically restrict their testimony to the time period before September 30, 2002, and continually reminded them of this fact. (Tr. 299-300, 307-11, 314-16, 318). Third, the ALJ allowed Plaintiff and her husband an opportunity to review the medical evidence at the hearing. (Tr. 295). Their only concern was that the records only went up to 2005. (Tr. 296). The ALJ explained to Plaintiff and her husband why he did not believe records of her recent medical history were relevant (Tr. 299-300), but still held the record open in order to allow her to submit additional reports. (Tr. 296-97). Plaintiff and her husband did submit these reports and they were considered by the ALJ. (Tr. 219-78).

Therefore, Plaintiff has failed to identify a substantial evidentiary gap in the record which prejudiced the outcome of her case. And despite the record's strong indications otherwise, even if Plaintiff did not understand that she had to present evidence that she was disabled prior to September 30, 2002, she has not pointed to any evidence that the ALJ failed to consider that indicates she was disabled during the relevant time period. (Pl.'s Mem. 10-11). Moreover, at the hearing, Plaintiff indicated that the only medical records missing from her file were the post-2005 reports, and those

12

were created long after the date she was last insured. (Tr. 296). Although the ALJ ultimately concluded that these records were irrelevant, he allowed Plaintiff to submit these reports and *considered* their relevance in reaching his decision. (Tr. 23, 296-300). Because the ALJ's conclusions were based on a full and fair record, a remand in this case would be pointless. Even if Plaintiff had been represented by an attorney at her hearing, she would still have fallen short of proving disability prior to September 30, 2002, because there are no medical records to support such a conclusion. (Tr. 24-27, 206-16).

**B.     The ALJ Did Not Err in Making His Credibility Findings Regarding Plaintiff and Her Husband's Testimony.**

To be sure, the law recognizes that an individual can have a disabling impairment even in the absence of objective medical evidence to support such a conclusion. *See* 20 C.F.R. § 404.1529 (amended 2010);[3] Social Security Ruling ("SSR") 96-97p, 1996 WL 374186, at *2 (1996); *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). For that reason, an ALJ must consider a claimant's subjective testimony regarding her functional limitations so long as there is a rational basis for accepting such testimony. *See Foote*, 67 F.3d at 1561-62. In evaluating a claimant's subjective testimony, an ALJ must apply the test articulated in *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991), which requires the ALJ to find: (1) evidence of an underlying medical condition; and (2) either that (a) the objective medical evidence confirms the symptom-related functional limitations, or (b) the "objectively determined medical condition can reasonably be expected to give rise to the claimed" symptom-related

---

[3]Although 20 C.F.R. § 404.1529 was amended in 2010, these amendments are inapplicable to this case.

functional limitations. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If this test is met, a claimant's subjective testimony can support a finding of disability. 20 C.F.R. § 404.1529.

But an ALJ is not required in all instances to accept a claimant's subjective testimony regarding her functional limitations. Determinations as to a witness's credibility are reserved for the ALJ. *See Johns v. Bowen*, 821 F.2d 551, 557 (11th Cir. 1987). When a claimant's proof of disability rests upon subjective evidence, an ALJ's credibility findings are critical to the outcome of a case. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983)). In such situations, an ALJ must articulate specific reasons for discrediting a claimant's subjective testimony. *Foote*, 67 F.3d at 1561-62. If an ALJ fails to properly explain why he discredited the testimony, then, as a matter of law, that testimony must be accepted as true. *See, e.g.*, *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988). Still, an ALJ need not explicitly state his reasons for discrediting a witness's testimony so long as (1) his decision makes those reasons obvious to the reviewing court, *see Tieniber*, 720 F.2d at 1255, and (2) those reasons are supported by substantial evidence, *see Haugen v. Astrue*, 497 F.Supp. 2d 1315, 1319 (11th Cir. 2007).

An ALJ is justified in discrediting a claimant's subjective testimony when it is inconsistent with medical evidence in the record. For example, in *Dyer v. Barnhart*, the claimant alleged he was disabled due to neck pain. 395 F.3d 1206, 1211 (11th Cir. 2005). The ALJ rejected the claimant's contention explaining that although he had shown he had an underlying medical condition, he had failed to establish that either (1) the objective medical evidence confirmed the severity of his pain, or (2) that his medical condition was so severe that the level of pain alleged could reasonably be expected to result from his condition. *Id.* The Eleventh Circuit affirmed the ALJ's conclusions. *Id.*

14

First, the court noted that the ALJ had discredited the claimant's complaints that he had, for several years, suffered from neck pain because he had not sought continuous and ongoing medical treatment. *Id.* Second, the ALJ explained that the medication the claimant had received for pain showed that the pain was not severe. *Id.* The court affirmed this conclusion even though the ALJ had failed to mention in his opinion one of the claimant's prescribed medications—Lortab—which is used to treat severe pain. *Id.* The court reasoned that because Lortab was prescribed on only one occasion for an injury unrelated to the claimant's claimed disability, the ALJ need not have considered it. *Id.* The primary concern, the court went on to state, is to make sure that the ALJ considered the medical evidence as a whole. *See id.* Finally, the ALJ determined that the claimant's other impairments were controlled by medication. *Id.* at 1211-12. Because all these conclusions were supported by substantial evidence, the court affirmed the decision. *Id.*

Conversely, an ALJ cannot ignore the medical evidence in electing to discredit a claimant's subjective testimony. For example, in *Haugen v. Astrue*, the claimant complained of disabling pain caused by spinal stenosis and disc problems, among other ailments. 497 F.Supp. 2d 1315, 1326-27 (11th Cir. 2007). The ALJ questioned the claimant about her daily activities and found that she could perform some household chores including light cooking and cleaning. *Id.* at 1326. The ALJ then went on to conclude that the claimant was not disabled because, if her pain was as severe as she alleged, she would not be able to perform these activities. *Id.* at 1327. The Eleventh Circuit reversed noting that "[t]he ability to perform the limited activities noted by the ALJ does not rule out the presence of disabling pain." *Id.* Instead, the ALJ should have focused on the medical evidence such as several myelograms and MRIs confirming that the claimant had multiple herniated discs. *Id.* at 1324. *See also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (rejecting ALJ's

15

conclusion because he did not discuss the second or third prong of the pain standard and because he failed to address two underlying medical conditions altogether); *Foote*, 67 F.3d at 1562 (stating that an ALJ's rationale for rejection cannot be a simple broad and sweeping statement that the witness was not credible); *Frizzell v. Astrue*, 487 F.Supp. 2d 1301, 1305-07 (11th Cir. 2007) (rejecting the ALJ's conclusion because he focused on the claimant's ability to perform daily activities rather than whether her testimony was supported by the medical evidence under the proper pain standard).

In this case, Plaintiff claims that the ALJ failed to adequately articulate his reasons for rejecting her and her husband's testimony regarding her limitations prior to September 30, 2002. This argument is without merit. While the ALJ's fifth finding contains a broad statement discrediting Plaintiff's testimony, the body of the ALJ's decision adequately discloses his specific reasons for doing so. (Tr. 24-27).

Initially, this court notes that the ALJ did not discredit all of Plaintiff's testimony, only her testimony stating that she was unable to work prior to September 30, 2002. (Tr. 25, 27). The ALJ discredited Plaintiff's testimony asserting disabling functional limitations prior to that date because it is inconsistent with the medical evidence. Thus, contrary to Plaintiff's contentions, the ALJ's reason for discrediting her testimony could not be more clear. In fact, the ALJ specifically stated, "[a] finding of a disabling visual impairment, or any other disabling impairment or combination of impairments, on or before September 30, 2002, would be inconsistent with the claimant's treating medical records." To be sure, the ALJ noted that Plaintiff and her husband testified that "her visual impairment had progressively worsened," and he found that "the medical evidence supports those allegations." (Tr. 26). The ALJ even concluded that Plaintiff and her husband's testimony was credible regarding Plaintiff's current limitations. (*Id.*). But the ALJ was prohibited from considering

16

Plaintiff's current limitations in his disability determination because Plaintiff's last date of insurance was September 30, 2002.

Moreover, the record shows that the ALJ's conclusion that Plaintiff's testimony is inconsistent with her medical records is supported by substantial evidence.   Regarding Plaintiff's visual impairment, the ALJ recognized that she underwent retinal surgery in December 2001, but that her medical records did not establish disability from this event.  (Tr. 25, 206-07, 215).  On October 25, 2002, upon examine Plaintiff's pressure was 23 in her right eye and 24 in her left eye.  (Tr. 207). And, when Plaintiff was examined again by Dr. Prestridge on November 22, 2002, her pressure was 21 in the right eye and 22 in the left eye.  (*Id.*).  The ALJ also cited medical records from February 2003—six months after Plaintiff's insured status had expired—showing that Plaintiff's visual acuity was 20/70 in her right eye and 20/60 in her left.  (Tr. 25).  Plaintiff admits in her memorandum that her visual acuity was stable around this range throughout 2003.  (Pl.'s Mem. 5-6).  The ALJ concluded that Plaintiff's visual acuity was not so diminished that she would have been unable to perform work consistent with her specified RFC.[4]  (Tr. 25).

Additionally, Plaintiff's physician, Darrell Prestridge, stated in a 2003 letter that Plaintiff's visual acuity when he first saw her in November 2001 was 20/60 in the right eye and 20/40 in the left eye.  (Tr. 206).  On September 22, 2003, Plaintiff reported to Dr. Prestridge that she felt her vision was improving.  (Tr. 192).  A month later, Plaintiff told Dr. Paul L. Kaufman the same thing. (Tr. 184).  It was not until 2004, that Plaintiff first reported to Dr. Prestridge that everything was

---

[4]The ALJ found that Plaintiff had the RFC "to perform medium work which allows for no driving; no unprotected heights; no operation of hazardous machinery; and no work requiring the reading of instructions in fine or small print . . . ."  (Tr. 28-29).

"black." (Tr. 164-76).  Therefore, it is reasonably apparent to this court why the ALJ discredited Plaintiff's subjective testimony regarding her visual impairments prior to September 30, 2002.

The ALJ also considered Plaintiff's other impairments.  With regard to Plaintiff's diabetes and hypertension, the ALJ found no evidence that Plaintiff experienced disabling limitations from these impairments during the relevant time period.  (Tr. 26).  In fact, Plaintiff reported in 2004 to Dr. Michael Geer, the physician treating her for diabetes, that she was "feeling well" and was experiencing only mild lower extremity swelling.  (Tr. 23, 101-08).  Because Plaintiff's diabetes and hypertension did not place any functional limitations on her, the ALJ properly excluded these impairments from his RFC analysis. *See* SSR 96-98p, 1996 WL 374184, at *1.  The ALJ also considered Plaintiff's complaints of lower back pain and arthritis and found that they did not begin until 2007.  (Tr. 26).  Plaintiff's husband testified that she starting using a cane about a year prior to the hearing on February 20, 2008 (Tr. 288, 322), and her medical records show that she first complained of lower back pain to Dr. Geer in August 2007.  (Tr. 219-22).  Therefore, the ALJ properly refused to consider Plaintiff's testimony regarding her arthritis.

Finally, Plaintiff testified that she experienced some shortness of breath during the period at issue.  (Tr. 26, 308-10).  The ALJ found that there "are no medical records to support that allegation" either before or after September 30, 2002.  (Tr. 26, 100-278).  Because the record lacked evidence of an underlying medical condition which could reasonably be expected to cause shortness of breath, the ALJ properly discredited this testimony.  *See* SSR 96-97p, 1996 WL 374186, at *1.

A review of Plaintiff's medical records shows they are inconsistent with her testimony that she was unable to work prior to September 30, 2002, and therefore the ALJ had good reason to discredit that testimony.  Unlike the ALJ in *Haugen* (who improperly discredited the claimant's

18

subjective testimony because she was able to perform household chores), the ALJ in this case properly focused on Plaintiff's medical records. In doing so, the ALJ, consistent with *Dyer*, properly discredited Plaintiff's testimony because it was not confirmed by underlying medical records nor was it consistent with symptoms which could reasonably be expected to result from her objectively determined medical conditions. Indeed, the ALJ in this case determined that Plaintiff's underlying medical conditions could not reasonably be expected to produce the functional restrictions she claims to have experienced prior to September 30, 2002. (Tr. 27). And just as was the case in *Dyer*, where the testimony of the claimant regarding disabling pain was discredited because he failed to seek treatment for it, Plaintiff has not pointed to any efforts on her part prior to September 30, 2002 to seek continuous treatment for any disabling conditions (other than her visual impairment). Therefore, the ALJ was entitled to conclude that Plaintiff's testimony regarding her functional limitations prior to September 30, 2002 was not credible.

Because the ALJ applied the proper legal standard for discrediting Plaintiff's testimony and his reasons are supported by substantial evidence, his decision is due to be affirmed.

### VII.  Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this _____27th_____ day of January, 2011.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

19